## SANBORN & FOLLETT v. MAGEE.

Mortgages: MERGER: APPLICATION OF PAYMENTS. Plaintiffs held the note of G., which was secured by a chattel mortgage, and also by a mortgage on four hundred acres of land. G. sold nine hundred and twenty acres of land, including the four hundred acres, to his sons, who assumed a large amount of mortgage indebtedness thereon, including the debt to plaintiffs. Afterwards the sons, by a deed absolute on its face, but which, with collateral agreements, was a mortgage in effect, conveyed seven hundred and sixty acres of the land to plaintiffs, who agreed to pay all the mortgages on the land conveyed to them, and a certain judgment, and all taxes, and to hold G. " harmless from the payment of the same." The sons had the right to sell any of the land on terms satisfactory to plaintiffs, and were in such case to account for the proceeds. They also had the right to occupy the land for three

years, keeping up improvements, and paying interest and taxes. They also had the right to redeem upon certain stated terms. Plaintiffs afterwards sold some of the chattels included in their mortgage first above named, and applied the most of the proceeds in paying interest on mortgages assumed by them in the transaction with the sons. They also sold a portion of the land, taking therefor notes not yet paid. *Held*—

(1) That judgment creditors of G. could not complain if he consented to the use made by plaintiffs of the proceeds of the chattels sold, and that they could not demand that the proceeds of the land sold should be applied upon the payment of the note which plaintiffs held against him.

(2) That the taking of the title to the land from the sons did not operate to merge their mortgage and the debt secured thereby in the title, and so work a satisfaction also of the chattel mortgage, so as to subject the remaining chattels to liability for other debts owing by G.

*Appeal from Woodbury District Court.*—Hon. Charles H. Lewis, Judge.

Filed, February 10, 1890.

Action to recover the possession of specific personal property, and damages for its detention. There was a trial by the court, and a judgment in favor of plaintiffs for the property and costs. The defendant appeals.

*J. H. & C. M. Swan* and *W. D. Buckley*, for appellant.

*J. P. Blood*, for appellees.

Robinson, J.—On the twenty-sixth day of July, 1886, one Joseph Gravel made to Chapin Bros. his two promissory notes, of which one was for $1,519.40, payable September 26, 1886, and the other was for $3,652.20, payable January 26, 1887. At the same time, to secure their payment, he executed a chattel mortgage on eighty-four steers four years old, and fifty steers three years old. On the ninth day of November, 1886, Joseph Gravel, to further secure the payment of

said notes, executed a chattel mortgage on two. stallions, of which one is the property in controversy in this action, two geldings, and seventeen colts, and also a mortgage on four hundred acres of land. The note first described has been paid. On the twenty-eighth day of January, 1887, the sum of sixty-seven dollars was paid on the other note, and on the eighth day of the next month all interest due to that date, and $877.20 of the principal, were paid; and the note and securities were then sold and transferred to plaintiffs by Chapin Bros. At that time all but about ten of the mortgaged steers had been sold. On the fourteenth day of January, 1887, Joseph Gravel conveyed to his sons, A. J. Gravel and A. L. Gravel, about nine hundred and twenty-six acres of land subject to mortgages thereon amounting to twelve thousand, five hundred dollars, which the grantees assumed and agreed to pay. On the thirteenth day of March, 1887, said grantees conveyed to Judson L. Follett seven hundred and sixty acres of the land received of their father as aforesaid. It was provided by a separate agreement in writing that Follett assumed and should pay all the mortgages on the premises conveyed to him, a judgment which was specified, and all taxes, and hold Joseph Gravel and his wife "harmless from the payment of the same." The agreement further provided that A. J. and A. L. Gravel might sell any or all of the premises on terms satisfactory to Follett, and turn over to him the proceeds; that they might use and occupy said premises for three years from March 1, 1887, in consideration of which they were to keep the improvements in good condition at their own expense, and pay all interest to become due on the debts secured by the mortgages on the premises, and pay all taxes which should be levied thereon. It was further provided that said A. J. and A. L. Gravel might redeem any portion of said premises, in tracts of not less than eighty acres each, by making certain payments on terms specified; such redemption to be made "by paying the proportionate amount that

the said tract stands as security for the sums that the said Follett has become responsible for, together with the sums that he may have been required to pay for any other cause to protect all of said premises." In ascertaining the amount to be paid in redemption, it was provided that Follett should receive the sums paid out "as principal, interest, taxes, costs and all other sums as expenses that he may have been required to pay to protect or improve said premises, with ten per cent. interest on the whole from date of each payment." The conveyance to Follett, and the agreement signed by him, were in fact made for and in behalf of the copartnership of Sanborn & Follett, plaintiffs, of which he is a member. On the twenty-eighth day of June, 1887, plaintiffs received two hundred and ten dollars, the most of which came from the sale of the mortgaged steers. Of that amount, sixty-seven dollars was paid on the note purchased by them in January, and the remainder was used in paying interest on debts secured by mortgages, the payment of which had been assumed by Follett's agreement. On the twenty-second day of October, 1888, plaintiffs sold one hundred and sixty acres of the land included in the mortgage to Chapin Bros. for the sum of fifty hundred and twenty dollars in notes, which have not yet been paid. The incumbrance on the land so sold was to be paid by plaintiffs, although the transaction was in the name of Follett.

The property in controversy is a black Bashaw stallion of the alleged value of six hundred dollars. It is claimed by plaintiffs by virtue of the chattel mortgage executed by Joseph Gravel to Chapin Bros. on the ninth day of November, 1886, and assigned to plaintiffs. The defendant claims the property as sheriff under an execution against the property of Joseph Gravel, issued on the twenty-fifth day of October, 1888, and levied on the twenty-ninth day of that month, by taking the stallion in question from the possession of Joseph Gravel. It was taken from defendant under the writ of replevin issued in this action. Appellant

claims that the debt secured by the chattel mortgage to Chapin Bros. was fully paid before his levy was made, by the payment of two hundred and ten dollars in June, 1887, and by the sale of the one hundred and sixty acres of land in 1888; and it may be conceded that the claim is well founded if the sum named, and the proceeds of the sale of the land, should be applied on the mortgage debt. That such application has not been made is admitted. Whether or not Joseph Gravel and his sons consented to the use made of the two hundred and ten dollars, and the proceeds of the land sold, is not shown. Joseph Gravel could have required the proceeds of the steers to be used in paying his note purchased by plaintiffs, but it was within his power to assent to a different application of the money, and, if he did so, his creditors represented by defendant could not complain.

It is claimed that the effect of the conveyance made by the sons to Follett, and the agreement of the latter to assume and pay the mortgage indebtedness, had the effect to satisfy so much of it as was held by plaintiffs. It is clear, however, that the conveyance to Follett was in the nature of a mortgage, although it provided in terms that it should be treated as absolute. The sons remained in possession of the premises, and had the right to redeem them by paying sums which Follett should advance, and for which he should be responsible with interest. They also had the right to sell them, subject to the approval of Follett. There is evidence which tends to show that the transactions of February and March were separate and distinct, and that it was not the intent of the parties to the March transfer and agreement that the mortgage debt held by plaintiffs should be merged in the title acquired by Follett. On the contrary, it appears that a requirement that such a merger should take effect would have prevented the agreement. It was the desire and for the interest of plaintiffs to retain all the security they had, and all they acquired, to protect the claim they held, and those

for which they became responsible. The provisions of the agreement with Follett, which permitted A. J. and A. L. Gravel to redeem the lands by them conveyed, we must presume, were designed for their benefit. Therefore, it appears that there was no purpose to vest in Follett or the plaintiffs an absolute title to the land, and no intent to merge or release securities. In the absence of an agreement of the parties so to do, the law will not apply the proceeds of the sale of the land on plaintiffs' claim against Joseph Gravel. The evidence to support the finding of the district court is ample. Since the mortgage debt was not paid, the mortgaged chattel could not be taken lawfully in the manner attempted in this case. The judgment of the court below is　　　　　　　　　　　　　　　AFFIRMED.